Commonwealth *v.* Riley, Appellant.

Argued March 19, 1934.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*Chas. W. Eaby,* for appellant.

*Paul A. Mueller,* District Attorney, and with him *K. L. Shirk,* Assistant District Attorney, for appellee.

78

Joseph H. Riley was indicted upon a charge of embracery in unlawfully attempting on or about June 13, 1934, to corrupt or influence one David L. Harnish, a grand juror, as to a certain case against one William T. Kline, which would shortly thereafter come before a grand jury to which said David L. Harnish had been summoned to serve. A demurrer to said indictment was overruled and the case subsequently came to trial, and the jury returned a verdict of guilty.

The defendant was indicted under Section 13 of the Act of March 31, 1860, P. L. 382 (18 PS 231) which provides: "If any person shall attempt to corrupt or influence any juror ...... by endeavoring, either in conversation ...... or by persuasion, promises or entreaties, or by any other private means, to bias the mind or judgment of such juror ...... as to any cause pending in the court to which such juror has been summoned, ...... except by the strength of the evidence or the arguments of himself or his counsel during the trial or hearing of the case, etc.

David L. Harnish, called on behalf of the Commonwealth, testified to a conversation with the defendant at the former's place of business, about a week before he served on the grand jury for which he had been summoned, wherein the defendant "asked me to do what I could for Alderman Kline, or William Kline. The only thing that I knew that he asked me was to do what I could for Kline, you know, and use my influence; that Herr was a bad actor ...... He was in the slot machines, I think, connected with the slot machines, to the best of my knowledge." Harnish further testified that he subsequently served on the grand jury and true bills were returned against Alderman Kline.

Joseph H. Riley, defendant, testified on his own behalf, that he had known Harnish for a good many

years; that on June 9, or 10 he had been at the railroad station and in returning to his own store, located a short distance from that of Harnish, he passed Harnish's place and stopped there; that he had some conversation about some property in which the latter was interested and also about the sale of some paint, and while so engaged he saw Alderman Kline passing on the other side of the street, whereupon he, Riley, said, ''I feel sorry for Kline, going over there. I feel sorry for that bird to be convicted on account of testimony by this man Herr. When Kline went by I said to Mr. Harnish, 'It looks like he is in for lots of trouble.' He says to me, 'Is that Alderman Kline?' I says 'Yes; that man Herr is just as bad if not worse than Kline.' '' He, Riley, claimed that at that time he did not know that Harnish was a grand juror; that he did not go there for the purpose of seeing Harnish on behalf of Kline, nor did he know that Kline was going to come on the other side of the street, and that he did not intend to corrupt or influence Harnish in any way, shape or form.

Harnish, in rebuttal, testified that he did not remember in the conversation testified to, that the defendant mentioned that Alderman Kline was passing, or that he and Riley were discussing the purchase of some paint.

William T. Kline testified that he is the alderman of the fifth ward; that he could not say whether or not he went down Prince Street on that day; but he frequently used that way of going to and from places of business. He testified that, if he did go down the street on that day, he did not do so by concert or arrangement with Mr. Riley.

Other than the testimony above referred to there was no evidence to the effect that the defendant had attempted to corrupt or influence Harnish by endeavoring to bias his mind or judgment as to the

Kline case. There was no testimony as to any bribe, threat, promise or inducement.

The court, ATLEE, P. J., instructed the jury by reading the section of the Act of Assembly under which the defendant was indicted, and then saying: "The Commonwealth alleges that, on and before the 13th day of June, 1932, the defendant, Joseph H. Riley, committed this offense, in that he called upon one, David L. Harnish, who had been drawn as a member of the grand jury for the June Term, 1932, and then and there engaged in a conversation with him about a case which was to come before that grand jury. Such is the allegation of the Commonwealth."

The trial judge declined a point for binding instructions in favor of defendant but referred to the testimony of both Harnish and Riley in his charge to the jury. The jury returned a verdict of "guilty." A motion for new trial was overruled in an opinion by the trial judge wherein he relies on the case of Commonwealth v. Ostrum, 70 Pa. Superior Ct. 485, in stating that "on the trial of a criminal case it is not reversible error for the court to instruct the jury in the very language of the law and to stop at that." From the sentence pronounced on the judgment, defendant has appealed, assigning as error, inter alia, in not (3) instructing the jury that it must find as a fact, before it could convict, that the defendant knew that the person with whom he conversed was a grand juror; (4) in not instructing the jury that it must find as a fact, before it could convict, that the defendant attempted or intended to corrupt or influence said grand juror; (5) in refusing binding instructions, and (6) in overruling the motion for new trial.

As stated by the Commonwealth, in its brief, "The real issues before the jury in this case were whether or not the defendant knew he was talking with a person who had been summoned as a grand juror, and

whether or not he was attempting to influence such person."

While the court discussed the testimony of both Harnish and Riley, supra, it did not instruct the jury in respect to the burden on the Commonwealth on these issues. Had it stopped with the reading of the section of the statute under which the indictment was found, it might be urged with some reason that this would have been sufficient, but when it was followed by the statement, supra, that the Commonwealth alleges that the defendant committed this offense by calling upon Harnish and engaging in a conversation with Harnish about a case which was to come before the grand jury, this was not applying the proper test as to the guilt or innocence of the defendant in the alleged violation of the Act of Assembly.

As stated in Commonwealth v. Kaufmann, 1 Phila. 534 "To speak of a case accidentally in the presence of jurors, without knowing their character, is no offense; but if the defendant knew they were jurors, and knowingly used language in their hearing calculated to influence their verdict, the offense is complete."

The question of knowledge on the part of the defendant, as to whether Harnish was summoned as a grand juror, may be established either by direct testimony or by inference from other facts; likewise on the question of intent to corrupt. The failure to so instruct was not merely inadequate, but was basic and fundamental. Its effect was to confuse and mislead the jury as to the real issues.

The 3rd, 4th and 5th assignments of error are sustained, the judgment reversed and new trial granted.